**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CROSBY LEGACY COMPANY, LLC, d/b/a PHILIP CROSBY ASSOCIATES, | ) ) ) ) | |
| *Plaintiff*, | ) ) | Civil Action No.: 4:24-cv-04480-ASH |
| v. | ) ) | |
| TECHNIP ENERGIES NV, and TECHNIP ENERGIES USA, INC., | ) ) ) | JURY TRIAL DEMANDED |
| *Defendants*. | ) ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT TECHNIP ENERGIES USA, INC.'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................ 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 2

III.    FACTUAL BACKGROUND ............................................................................................ 2

    A.    PCA's Quality Management and Consulting Business ........................................... 2

    B.    PCA's Work for FMC and the Confidential PCA Licensed Materials Provided to FMC Under the 2014 Agreement ........................................................................ 3

    C.    FMC's Impact Quality Program and Technip Energies' Acquisition and Use of that Program Following its Establishment ....................................................... 4

    D.    PCA's Complaint Makes Clear that it Alleges that Technip Energies Improperly Obtained and Continues to Use its Confidential and Trade Secret Information ..... 5

IV.    STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ............................. 6

V.    ARGUMENT AND AUTHORITIES .............................................................................. 6

    A.    LEGAL STANDARD .......................................................................................... 6

        1.    12(b)(6) Motions to Dismiss are Disfavored and a Complaint Should Not be so Dismissed Unless it Appears Beyond Doubt that Plaintiff can Prove No Set of Facts that Would Entitle it to Relief ........................... 6

        2.    Confidential and Trade Secret Information are Not Necessarily the Same Thing, and Courts in this District have Repeatedly Found that State Law ClaimsBased Upon Misappropriation of Confidential Information are Not Preempted by TUTSA ................................................ 7

    B.    ARGUMENT ....................................................................................................... 9

        1.    Courts in this District Agree that State Law Claims Based Upon the Misappropriation of Confidential Information are Not Preempted by TUTSA ....................................................................................................... 9

        2.    Courts in Jurisdictions Across the Country Accord with the Decisions of *Forum Energy*, *DHI*, and *AMID*. .......................................................... 11

        3.    PCA Allegations for Conversion and Unjust Enrichment are Based Upon Technip Energies' Misappropriation of Confidential Information and Thus are Not Preempted ..................................................................... 13

        4.    PCA Should be Allowed to Amend the Complaint to Specify that its Claims for Conversion and Unjust Enrichment are Grounded in Technip Energies' Unlawful Retention of Use of PCA's Confidential Information. .................................................................................................. 15

VI.    CONCLUSION .................................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Verizon Wireless Servs.*, *L.L.C.*,
   875 F.3d 243 (5th Cir. 2017) ................................................................................ 7

*AMID, Inc. v. Meic Alert Found. United States, Inc.*,
   241 F. Supp. 3d 788 (S.D. Tex. 2017) .................................................... 9, 10, 11, 14

*A-Pro Towing and Recovery, LLC v. City of Port Isabel*,
   Civil Action No. 1:19-CV-16, 2019 WL 11270635 (S.D. Tex. Dec. 04, 2019) ......... 7

*AWP, Inc. v. Commonwealth Excavating, Inc.*,
   Civ. No. 5:13-cv-031, 2013 WL 3830500 (W.D. Va. Jul. 24, 2013) .................. 11, 12

*Brand Servs., L.L.C. v. Irex Corp.*,
   909 F.3d 151 (5th Cir. 2018) ............................................................................ 7, 12

*Calhoun v. Collier*,
   78 F. 4th 846 (5th Cir. 2023) ......................................................................... 16, 17

*Cenveo Corp. v. Slater*,
   No. 06-CV-2632, 2007 WL 527720 (E.D. Penn. Feb. 12, 2007) ............................ 12

*DHI Grp., Inc. v. Kent*,
   397 F. Supp. 3d 904 (S.D. Tex. 2019) ............................................................ *passim*

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
   1:17-CV-444-RP, 2018 WL 315753 (W.D. Tex. Jan. 5, 2018) .......................... 10, 14

*Foman v. Davis*,
   371 U.S. 178 (1962) ..................................................................................... 16, 17

*Forum Energy Techs., Inc. v. Jason Oil & Gas Equip., LLC*,
   Civil Action No. H-20-3768, 2022 WL 1103078 (S.D. Tex. Apr. 13, 2022) ............ *passim*

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
   313 F.3d 305 (5th Cir. 2002) ................................................................................ 16

*Griggs v. Hinds Junior Coll.*,
   563 F.2d 179 (5th Cir. 1977) ........................................................................ 16, 17

*H&E Equip. Servs., Inc. v. St. Germain*,
   No. 19-134-SDD-EWD, 2020 WL 1678327 (M.D. La. Apr. 6, 2020) ...................... 7

*Leal v. McHugh*,
   731 F.3d 405 (5th Cir. 2013) ................................................................................. 6

*Moon v. City of El Paso,*
   906 F.3d 352 (5th Cir. 2018) .......................................................................... 6

*Murthy v. Abbott Labs.,*
   No. 4:11-CV-105, 2012 WL 6020157 (S.D. Tex. Dec. 3, 2012) ................................. 16

*Neural Magic, Inc. v. Facebook, Inc.,*
   No. 1:20-CV-10444-DJC, 2020 WL 13538627 (D. Mass. Oct. 29, 2020) ............................. 12

*Providence Title Co. v. Truly Title, Inc.,*
   732 F. Supp. 3d 656 (E.D. Tex. 2024) ........................................................................ 7

*Reynolds v. Sanchez Oil and Gas Corp.,*
   No. 01-18-00940-CV, 2023 WL 8262764 (Tex. App.—Houston [1st] Nov. 30, 2023) ........... 15

*Shaikh v. Texas A&M Univ. Coll. of Med.,*
   739 F. App'x 215 (5th Cir. June 20, 2018) .................................................................. 6

*St. Clair v. Nellcor Puritan Bennett LLC,*
   No. CV-10-1275-PHX-LOA, 2011 WL 5335559 (D. Ariz. Nov. 7, 2011) ................................ 7

*Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., Inc.,*
   191 F. Supp. 2d 652 (E.D. Va. 2002) ........................................................................ 12

*StoneCoat of Tex., LLC v. ProCal Stone Desing, LLC,*
   426 F. Supp. 3d 311 (E.D. Tex. 2019) ........................................................................ 15

*Stripling v. Jordan Prod. Co., LLC,*
   234 F.3d 863 (5th Cir. 2000) .................................................................................. 7

*Super Starr Int'l, LLC v. Fresh Tex Produce,* LLC,
   531 S.W.3d 829 (Tex. App.—Corpus Christi 2017) ......................................................11, 15

*Sw. Whey, Inc. v. Nutrition 101, Inc.,*
   117 F. Supp. 2d 770 (C.D. Ill. 2000) .......................................................................... 7

*Title Source, Inc. v. HouseCanary, Inc.,*
   612 S.W.3d 517 (Tex. App.--San Antonio 2020) ....................................................... 15

*Topstone Commc'ns., Inc. v. Xu,*
   729 F. Supp. 3d 701 (S.D. Tex. 2024) ................................................................... *passim*

*TPI Cloud Hosting, Inc. v. Keller Williams Realty Inc.,*
   No. A-19-CV-00808-JRN, 2020 WL 4708713 (W.D. Tex. Jun. 18, 2020) ............................. 8

*Westmount Inc. v. Great Lakes Reinsurance SE,*
   Civil Action No. H-19-3889, 2020 WL 6174731 (S.D. Tex. Mar. 24, 2020) ...................... 6, 7

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 134A.001–134A.008 .......................................................... 1

Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6).................................................................... 8

Tex. Civ. Prac. & Rem. Code Ann. § 134A.007 ...................................................................... 10

18 U.S.C. § 1839 (3)(A)–(B) ................................................................................ 8

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................... 2, 6, 7

Fed. R. Civ. P. 15(a) ......................................................................... 16

## I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT

Since their inception, Technip Energies NV and Technip Energies USA, Inc. (together, "Technip Energies") have unlawfully utilized Crosby Legacy Company, LLC, d/b/a Philip Crosby Associates ("PCA") confidential and trade secret information as a basis for Technip Energies' internal quality management program used throughout the company. PCA's Complaint clearly alleges that Technip Energies knowingly and unlawfully utilized PCA's **confidential <u>and</u> trade secret information** as the basis for its companywide quality management programs . . ." Dkt. No. 1 ("Compl.") ¶ 1 (emphasis added). And it is the unlawful use of PCA's confidential and trade secret information that PCA asks this court to remedy by enjoining such use and awarding damages to PCA. While PCA alleged violation of federal and state trade secrets law to remedy Technip Energies' misappropriation of PCA's trade secret information, PCA also included claims for conversion and unjust enrichment against Technip Energies in the alternative, to address Technip Energies' theft of its confidential information to the extent the information misappropriated by Technip Energies is found not to rise to the level of trade secret. In other words, while all trade secrets are necessarily confidential, not all confidential information is necessarily a trade secret. Because confidential and trade secret information can be different, including with different elements of proof, courts in this District have recently, and consistently, found that the preemption provision of the Texas Uniform Trade Secrets Act ("TUTSA")[1] does not preempt civil remedies for the misappropriation of confidential information. Those same courts have approved of the pleading method PCA has adopted here: PCA has plead its common law claims addressing misappropriation of confidential information—its conversion and unjust enrichment claims—in the alternative to its trade secret claims. To the extent the misappropriated PCA information is

---

[1] Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001–134A.008.

found to be trade secret, it is to be remedied through the trade secret claims; however, if it is found to constitute only confidential information, it is to be remedied through the conversion and unjust enrichment claims. As such, PCA's conversion and unjust enrichment claims are not preempted, and Technip Energies' 12(b)(6) Motions to Dismiss on these grounds (Dkt. Nos. 15 and 16) [2] should be denied in their entirety.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

PCA filed this lawsuit on November 14, 2024. Dkt. No. 1. On January 24, 2025, Technip Energies USA, Inc. filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), arguing that PCA's conversion and unjust enrichment claims are preempted by PCA's TUTSA claim and should thus be dismissed. PCA's conversion and unjust enrichment claims are not preempted because they are grounded in Technip Energies' misappropriation of confidential information.

## III.    FACTUAL BACKGROUND

### A.    PCA's Quality Management and Consulting Business

PCA is a management consulting firm that works with its clients to improve quality within their business and manufacturing processes. Compl. ¶ 14. To accomplish this, PCA trains its clients' employees in PCA's methods to remove defects from ongoing business and manufacturing processes. *Id.* PCA often creates custom quality management projects for its clients that are based upon PCA's quality management principles and are specifically tailored to the needs of the particular client. *Id.* PCA's approach, and the implementation of its teachings and methods, generates measurable and tangible results for its clients. *Id.* For example, PCA has found that most businesses waste approximately 25–40% of their operating costs in the form of inefficiencies

---

[2] Technip Energies USA, Inc. and Technip Energies NV filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleging that PCA's conversion and unjust enrichment claims are preempted by TUTSA, Dkt. Nos. 15, 16; however, Technip Energies NV's Rule 12(b)(6) Motion merely "incorporates the preemption arguments discussed in [Technip Energies USA, Inc's] Motion." Dkt. No. 16 at 13.

resulting from internal quality management breakdowns, including because of internal quality-related requirements not being clearly communicated, or consistently monitored and achieved. *Id.* ¶¶ 16, 14.

**B.    PCA's Work for FMC and the Confidential PCA Licensed Materials Provided to FMC Under the 2014 Agreement**

In 2008, FMC Technologies, Inc. ("FMC") engaged PCA to assist one of its business units to reduce inefficiencies and costs by improving that unit's quality management program. *Id.* ¶ 18. PCA's process was so effective that FMC engaged PCA to assist another of its business units. *Id.* ¶ 18. FMC eventually requested that PCA grant FMC a company-wide license for use of PCA's methods, and in 2014 PCA granted FMC such a license (the "2014 Agreement") to use the Licensed PCA Materials. *Id.* ¶¶ 18–19, Ex. A § 1, Appendix 1. While the 2014 Agreement granted FMC a limited license to the Licensed PCA Materials, it made clear that such materials "including the proprietary techniques and approaches" contained therein, "shall remain the exclusive property of PCA." *Id.* Ex. A § 5.

The 2014 Agreement also made clear that "the Licensed PCA Materials and the proprietary techniques and approaches described and embodied therein are confidential information of PCA." *Id.* Ex. A § 6; *see also* § 1 ("Further, as a condition of use of the Licensed PCA Materials and Modified Works, each Authorized FMC User must comply with use restrictions and confidentiality obligations equivalent to those set forth in this Agreement."). In addition to being confidential, the 2014 Agreement recognized that the Licensed PCA Materials **also** constituted trade secrets:

> Client will . . . maintain the Licensed PCA Materials as **confidential**, exercising reasonable precautions to prevent any unauthorized access, use or disclosure of the Licensed PCA Materials. Such precautions . . . will include, without limitation, (i) using no less than reasonable measures to protect the secrecy of the Licensed PCA Materials, (ii) ensuring that all persons with access to the Licensed PCA Materials are advised of and **bound to protect the confidential and trade secret nature thereof,** (iii) taking reasonable measures to ensure that the Licensed PCA Materials are not published or readily ascertainable to the public and

(iv) implementing processes to protect the authorized distribution and security of the Licensed PCA Materials in electronic form . . .

*Id.* Ex. A § 6 (emphasis added).

The confidentiality obligations set forth in the 2014 Agreement reflect the confidentiality obligations PCA requires of all its customers before they are given access to PCA's confidential and trade secret information. *Id.* ¶ 22. For example, the agreements PCA entered into concerning the individual FMC business units for which PCA conducted quality-related trainings also contained strict confidentiality provisions. For example, the Master Service and License Agreements between PCA and FMC provided that:

> **During the term of this Agreement and thereafter, Client will, and will cause its employees to, hold in strict confidence PCA's proprietary or confidential information, including proprietary techniques and approaches contained in the Materials, communicated by PCA to Client's employees.** Client's employees who have been provided Materials and/or PCA's proprietary and confidential information may disclose such Materials and information to other employees as necessary for implementation of the quality improvement and quality management process. **Client's employees may not train other employees in the proprietary techniques and approaches except in accordance with the terms of this Agreement.**

*Id.* (emphasis added).

### C.    FMC's Impact Quality Program and Technip Energies' Acquisition and Use of that Program Following its Establishment

Using the Licensed PCA Materials, FMC created and launched its Impact Quality program, which was FMC's internal quality management program used throughout the entire organization. *Id.* ¶ 24. Upon FMC's merger with Technip S.A. ("Technip") in January 2017 to create TechnipFMC plc ("TechnipFMC"), TechnipFMC continued to use the Impact Quality program, despite not having obtained PCA's written consent to do so. *Id.* ¶¶ 24–26.[3] TechnipFMC

---

[3] A Change of Control provision of the 2014 Agreement provided that upon a change of control, as defined in the 2014 Agreement, "the newly controlling entity must obtain prior written consent from PCA to use

subsequently spun off certain business units to establish Defendant Technip Energies in 2021. *Id.* ¶ 29.

Technip Energies took with it TechnipFMC's Impact Quality program, which was based upon PCA's confidential and trade secret information incorporated into the PCA Licensed Materials. *Id.* ¶ 30. Technip Energies has been using TechnipFMC's Impact Quality program since its inception and has greatly benefitted from that use as utilization of those programs have provided Technip Energies robust quality management systems and processes that would have otherwise taken Technip Energies years to develop at great cost to Technip Energies. *Id.* ¶ 30. Technip Energies continues to use that Impact Quality program to this day. *Id.* ¶¶ 31–33.

    **D.    PCA's Complaint Makes Clear that it Alleges that Technip Energies Improperly Obtained and Continues to Use its Confidential <u>and</u> Trade Secret Information.**

In the Complaint, PCA alleges that "Technip Energies has knowingly and unlawfully utilized PCA's **confidential <u>and</u> trade secret information** as the basis for its companywide quality management programs . . ." *Id.* ¶ 1 (emphasis added). And it is the unlawful use of PCA's confidential and trade secret information that PCA asks this court to remedy by enjoining such use and awarding damages to PCA for such unlawful use. *See id.* ("PCA asks this Court to enjoin Technip Energies from using PCA's **confidential <u>and</u> trade secret information** and to order Technip Energies to pay damages to PCA resulting from such unlawful use.") (emphasis added). This confidential and trade secret information that Technip Energies has unlawfully used is referred to for convenience in the Complaint using the defined term "PCA Trade Secrets"; however, that term—which includes "[t]he Licensed PCA Materials, including the teachings, methods, materials,

---

the Licensed PCA Materials . . ." Exhibit A, § 10. TechnipFMC's continued unlawful use of the PCA Licensed Materials is the subject of an ongoing litigation in Massachusetts, captioned *Crosby Legacy Company, LLC d/b/a Philip Crosby Associates v. TechnipFMC plc*, 1:18-cv-10814-NMG (D. Mass.). *See* Compl. ¶¶ 26–28.

techniques, and/or approaches contained within the Licensed PCA Materials,"[4]—was not meant to artificially limit the scope of the categories of information that PCA alleges were unlawfully obtained and utilized by Technip Energies. Rather, the defined term "PCA Trade Secrets" captures the "confidential **and** trade secret information" that PCA alleges Technip Energies improperly obtained and utilized in violation of Texas and federal law, not just the misappropriated trade secret information. *See id.*

## IV.    STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

The issue is whether PCA's conversion and unjust enrichment claims against Technip Energies should be dismissed as preempted by TUTSA. PCA's conversion and unjust enrichment claims against Technip Energies are based on Technip Energies' misappropriation of PCA's confidential, not trade secret, information and thus are not preempted by TUTSA. The standard of review is de novo. *See Moon v. City of El Paso*, 906 F.3d 352, 357 (5th Cir. 2018).

## V.    ARGUMENT AND AUTHORITIES

### A.    LEGAL STANDARD

#### 1.    12(b)(6) Motions to Dismiss are Disfavored and a Complaint Should Not be so Dismissed Unless it Appears Beyond Doubt that Plaintiff can Prove No Set of Facts that Would Entitle it to Relief.

"A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure 'is viewed with disfavor and is rarely granted.'" *Westmount Inc. v. Great Lakes Reinsurance SE*, Civil Action No. H-19-3889, 2020 WL 6174731, at *1 (S.D. Tex. Mar. 24, 2020) (quoting *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013); *Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 218 (5th Cir. June 20, 2018)). "The Court accepts the factual allegations in the complaint as true, and construes the facts alleged in the light most favorable to the plaintiff." *Id.*

---

[4] Compl. ¶ 4.

(citing *Alexander v. Verizon Wireless Servs.*, *L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017)). "The court 'may not dismiss a complaint under [R]ule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *A-Pro Towing and Recovery, LLC v. City of Port Isabel*, Civil Action No. 1:19-CV-16, 2019 WL 11270635, at *2 (S.D. Tex. Dec. 04, 2019) (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000)).

> **2.    Confidential and Trade Secret Information are Not Necessarily the Same Thing, and Courts in this District have Repeatedly Found that State Law Claims Based Upon Misappropriation of Confidential Information are Not Preempted by TUTSA.**

Confidential information is not necessarily a trade secret. *See Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 664 (E.D. Tex. 2024) ("[B]usiness information is not necessarily a trade secret simply because it is confidential.") (citing *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 158 (5th Cir. 2018) (acknowledging that **not** all **confidential** business information qualifies as a **trade secret** under the similarly worded Louisiana Uniform **Trade Secrets** Act)); *see also H&E Equip. Servs., Inc. v. St. Germain*, No. 19-134-SDD-EWD, 2020 WL 1678327, at *6 (M.D. La. Apr. 6, 2020) ("**Confidential** information and **trade secrets** are **not** the **same**.") (emphasis added); *St. Clair v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA, 2011 WL 5335559, at *2 (D. Ariz. Nov. 7, 2011) ("[C]onfidentiality alone does not transform business information into a trade secret."); *Sw. Whey, Inc. v. Nutrition 101, Inc.*, 117 F. Supp. 2d 770, 777 (C.D. Ill. 2000) ("[G]eneralized confidential business information does not constitute a protectable trade secret."). And determining whether information qualifies as confidential information is subject to different requirements than qualifying information as a trade secret. *See Providence Title Co.*, 732 F. Supp. 3d at 664 ("The DTSA makes plain that, in addition to being confidential, business information alleged to be a trade secret must have independent economic value, which

must be derived from the fact that the information is secret."); *see also* 18 U.S.C. § 1839 (3)(A)–(B) ("[T]he term 'trade secrets' means all forms and types of financial, business, scientific, technical, economic, or engineering information . . . if the owner thereof has taken reasonable measures to keep such information secret; and . . . the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]"); *accord* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6).

Courts, especially in this District, have recently and repeatedly found that TUTSA does not preempt tort, restitutionary, or other laws of the State of Texas where claims asserted under such laws are based on the misappropriation of confidential information, as opposed to trade secret information. *See Forum Energy Techs., Inc. v. Jason Oil & Gas Equip., LLC*, Civil Action No. H-20-3768, 2022 WL 1103078, at *9 (S.D. Tex. Apr. 13, 2022) ("Forum Energy's unfair competition claim is based solely on allegations that Jason Energy misappropriat[ed] Forum's confidential information. As alleged, the claim is not based on the misappropriation of trade secrets. The court denies dismissal on preemption. . . .") (cleaned up); *TPI Cloud Hosting, Inc. v. Keller Williams Realty Inc.*, No. A-19-CV-00808-JRN, 2020 WL 4708713, at *3 (W.D. Tex. Jun. 18, 2020) (recognizing that "[t]he application of TUTSA's preemption clause is relatively rare" and allowing the plaintiff's fraud claim to proceed because "the alleged fraud *could* have taken place even without trade secret misappropriation") (emphasis in original); *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 923 (S.D. Tex. 2019) ("[T]he plain language of the TUTSA's preemption provision states that it has no effect on 'other civil remedies that are not based upon misappropriation of a trade secret['] . . . . The court fails to see how the plain language of the TUTSA's preemption provision can be read to preempt civil remedies for the misappropriation of

information that is not a trade secret."); *AMID, Inc v. Meic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 828 (S.D. Tex. 2017) (holding that a plaintiff's "common-law claim for unfair competition by misappropriation [was] not preempted by [TUTSA] because [the plaintiff] could recover on its tort claim without proving the information [was] protected as trade secrets."); *Topstone Commc'ns., Inc. v. Xu*, 729 F. Supp. 3d 701, 709 (S.D. Tex. 2024) ("[T]he Court concludes that TUTSA's preemption provision is best read to preempt only those claims that allege misappropriation of trade secrets.").

### B.   ARGUMENT

Courts in this District have consistently found that common law claims concerning misappropriation of confidential information are not preempted by TUTSA. Because PCA's claims for conversion and unjust enrichment are based upon Technip Energies' improper utilization of PCA's confidential information, those claims are not preempted. However, to the extent the Court finds that position is insufficiently plead in the Complaint, PCA should be granted leave to amend the Complaint to make that position clear.

### 1.   Courts in this District Agree that State Law Claims Based Upon the Misappropriation of Confidential Information are Not Preempted by TUTSA.

Numerous courts in this District have found that common law claims based on misappropriation of confidential information—as opposed to trade secret information—are not preempted by TUTSA. For example, in *Forum Energy*, plaintiff alleged its competitor "bribed" a former employee to misappropriate confidential and trade secret information related to plaintiff's coiled tubing technology and then used that misappropriated confidential and trade secret information to create competing products. *Forum Energy*, 2022 WL 1103078, at *1. The court in *Forum Energy* (Judge Rosenthal) recognized that while "[TUTSA] 'displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade

9

secret' . . . The Act **does not preempt 'civil remedies that are not based upon misappropriation of a trade secret.'**" *Id.* at *6 (quoting Tex. Civ. Prac. & Rem. Code § 134A.007) (emphasis added). Accordingly, in that case, Judge Rosenthal refused to dismiss plaintiff's common law claims for unfair competition and conspiracy where those claims were based on the misappropriation of plaintiff's confidential, rather than trade secret, information. *See id.* at *8.

While Judge Rosenthal found that the plaintiff's tortious interference claim based on misappropriation of trade secrets was preempted by TUTSA, the court recognized that the result would be different if the plaintiff had alleged alternative theories of relief:

> In *AMID* . . . the plaintiff had pleaded alternative theories of relief. It sought relief on the theory that the defendant misappropriated information protected as trade secrets, and alternatively under the theory that the misappropriated information was not a trade secret but was confidential." On its "common-law unfair-competition claim," the plaintiff "did not allege that the information was protected as trade secrets." As alleged, the plaintiff could have recover[ed] on its tort claim without proving that the information was protected as trade secrets.

*Id.* at *7 (citing *AMID*, 241 F. Supp. 3d at 827–28) (cleaned up). Similarly in this case, PCA alleges alternative theories of relief and can prevail on its common law claims of conversion and unjust enrichment without having to prove that its confidential information subject to those claims rises to the level of a trade secret.

Judge Rosenthal's decision in *Forum Energy* also cited with approval the holding from another case in the Southern District of Texas, *DHI Grp., Inc. v. Kent*. In *DHI*, plaintiffs filed suit for trade secret misappropriation among other common law claims. *See* 397 F. Supp. 3d at 912. The *DHI* court (Magistrate Judge Nancy Johnson) recognized that "Texas federal courts have come to differing conclusions on whether the TUTSA's preemption provision encompasses the misappropriation of information that is not a trade secret." *Id.* at 922. Judge Johnson found, however, that certain other cases holding that TUTSA preempted all claims based on the alleged

10

improper taking of confidential business information "directly conflict with the TUTSA's plain language stating that it is to have no effect on civil remedies not based on trade secret misappropriation." *Id.* at 923 (citing *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 1:17-CV-444-RP, 2018 WL 315753 (W.D. Tex. Jan. 5, 2018); *Super Starr Int'l, LLC v. Fresh Tex Produce*, LLC, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.)). The *DHI* court further found—and the *Forum Energy* court agreed—that:

> The court fails to see how the plain language of the TUTSA's preemption provision can be read to preempt civil remedies for the misappropriation of information that is not a trade secret. . . . [T]he court finds the reasoning in *AMID* persuasive and finds that Plaintiffs may maintain their causes of action for the misappropriation of trade secrets under the TUTSA as well as their causes of action for the misappropriation of information that is not a trade secret. . . . [N]either party has established the trade secret status of any of the information that was illicitly obtained. Accordingly, at this time, the court cannot say whether any of Plaintiffs' non-TUTSA claims are preempted.

*Id.*; *see Forum Energy*, 2022 WL 1103078, at *8. Judge Ellison reached the same conclusion in a case decided last year. *See Topstone Commc'ns.*, 729 F. Supp. 3d at 708 ("This Court concludes that the language and purpose of TUTSA best support the *AMID* and *DHI Group* courts' approaches, and that [plaintiff's] breach of fiduciary duty and conspiracy claims are (at least at this juncture) not preempted by TUTSA.").

Thus, courts in the Southern District of Texas have uniformly rejected the position Technip Energies advances in this case.

### 2. Courts in Jurisdictions Across the Country Accord with the Decisions of *Forum Energy*, *DHI*, and *AMID*.

The holding by courts in this District that TUTSA's preemption provision does not preempt civil remedies for the misappropriation of information that is not a trade secret is the same holding reached by numerous other federal courts across the country that interpret substantially similar preemption provisions the same way. For instance, in *AWP, Inc. v. Commonwealth Excavating*,

11

*Inc.*, the plaintiffs alleged a statutory trade-secret claim as well as common-law conspiracy, tortious interference, and unjust-enrichment claims. Civ. No. 5:13-cv-031, 2013 WL 3830500, at *6 (W.D. Va. Jul 24, 2013). The court found that the defendant prematurely raised its preemption argument because the plaintiff had not proven its entitlement to relief under the trade secret statute. *Id.* at *7.

In *Neural Magic, Inc. v. Facebook, Inc.*, the court found that "[g]iven that the [Massachusetts Uniform Trade Secrets Act ("MUTSA")] is silent about uniformity with respect to confidential information that may not constitute a trade secret, the text of Section 42F which limits preemption to civil remedies for the misappropriation of trade secrets, the split in authority on the scope of preemption of similar UTSA provisions and the lack of authority in Massachusetts, the Court does not conclude that MUTSA preemption applies to the state law claims that Defendants now challenge where these claims rely upon the theft of alleged confidential information." No. 1:20-CV-10444-DJC, 2020 WL 13538627, at *3 (D. Mass. Oct. 29, 2020); *see also Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 527720, at *3 (E.D. Penn. Feb. 12, 2007) (finding that minority view that Trade Secret Act did not preempt common law tort claims was the "better approach" "when it has yet to be determined whether the information at issue constitutes a trade secret" and preemption would leave plaintiff without a remedy); *Brand Servs., LLC*, 909 F.3d at 157–59 ("We also conclude that if confidential information that is not a trade secret is nonetheless stolen and used to the unjust benefit of the thief or detriment of the victim, then a cause of action remains under Louisiana law. . . ," and concluding based on a "plain-text reading of LUTSA's preemption provision," that "LUTSA does not preempt civil law claims for conversion of information that does not constitute a trade secret under LUTSA."); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., Inc.*, 191 F. Supp. 2d 652, 658–59 (E.D. Va. 2002) ("In reviewing the decisions of district courts within this Circuit as well as decisions from other

jurisdictions, the Court has identified a distinct thread common to all. Specifically, where courts have found preemption on a motion to dismiss, they repeatedly establish that the information in issue—as alleged—constitutes trade secrets before reaching the preemption question . . . The plain meaning of the statute, coupled with decisions interpreting similar preemption provisions in the context of a motion to dismiss, make it apparent that, unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the VUTSA.").

### 3. PCA Allegations for Conversion and Unjust Enrichment are Based Upon Technip Energies' Misappropriation of Confidential Information and Thus are Not Preempted.

PCA's claims against Technip Energies for conversion and unjust enrichment are based upon Technip Energies' unlawful use of PCA's confidential information and thus are not preempted by PCA's TUTSA claims directed to PCA's allegations that Technip Energies has misappropriated its trade secrets. In the Complaint, PCA makes clear that it alleges "Technip Energies has knowingly and unlawfully utilized PCA's **confidential <u>and</u> trade secret information** as the basis for its companywide quality management programs . . ." Compl. ¶ 1. (emphasis added). While PCA used the defined term "PCA Trade Secrets" to capture the "confidential and trade secret information" that it alleges Technip Energies misappropriated, utilization of that term was not meant to limit PCA's claims to allegations of trade secret misappropriation. That is precisely why PCA also included claims for conversion and unjust enrichment, which are based upon allegations that Technip Energies misappropriated PCA's confidential information, not trade secrets.

While PCA alleges that the information captured within the defined term "PCA Trade Secrets" constitutes trade secret information under both the TUTSA and DTSA, that information has not yet been found to constitute trade secret information in this case. To the extent it is not

found to be trade secret, it is at least confidential information. *See, e.g.*, Compl. Ex. A § 6 (stating in part that "Client will . . . maintain the Licensed PCA Materials as **confidential**, exercising reasonable precautions to prevent any unauthorized access, use or disclosure of the Licensed PCA Materials[]"). PCA is entitled to remedy that theft of confidential information through its common law claims to the extent the information is found not to constitute a trade secret. *Forum Energy*, 2022 WL 1103078, at *8–9 ("den[ying] dismissal on preemption," where "claim is not based on misappropriation of trade secrets," and agreeing with *DHI*, holding that "plaintiffs could maintain their common law causes of action for misappropriation of information that was not a trade secret," along with co-pending trade secrets claims); *DHI*, 397 F. Supp. 3d at 923 ("The court fails to see how the plain language of the TUTSA's preemption provision can be read to preempt civil remedies for the misappropriation of information that is not a trade secret.").

Moreover, the cases relied upon by Defendant either support PCA's position or are distinguishable. Defendant's reliance on *Forum Energy* is misguided because that case recognized that a plaintiff could appropriately allege alternative theories of relief, alleging trade secret misappropriation and alternatively relief under common law claims based upon misappropriation of confidential information. *Forum Energy*, 2022 WL 1103078, at *7. So too is Defendants' reliance on *Topstone* in which the court agreed with the reasoning of *AMID* and *DHI*—cases cited and relied upon by PCA—to find that the plaintiff's common law claims were **not** preempted by TUTSA. 729 F. Supp. 3d at 708 (concluding that the "statutory text [of TUTSA] necessarily implies that TUTSA does not preempt civil remedies based on misappropriation of confidential information that does not fall within the definition of "trade secret[]").

The court's decision in *Embarcadero*, relied upon by Defendant, should not be followed because, as the *Topstone* court recognized, "[t]he *Embarcadero* court's approach would effectively

14

read the term "trade secret" out of the statute, replacing it with "confidential information." *Id.* at 708. Similarly, the *DHI* court recognized that *Super Starr*'s—another case relied upon by Defendants—finding that TUTSA preempted all claims based on the alleged improper taking of confidential business information "directly conflict[s] with the TUTSA's plain language stating that it is to have no effect on civil remedies not based on trade secret misappropriation." 397 F. Supp. 3d at 923. *StoneCoat of Texas* and *Title Source* are also both distinguishable because they were decided **before** both *Forum Energy* and *Topstone*, are not cases from this District, and are decisions where the factual record had already been well developed—having advanced to summary judgment and through trial respectively—and therefore less instructive here where discovery has yet to begin. *See StoneCoat of Texas, LLC v. ProCal Stone Desing, LLC*, 426 F. Supp. 3d 311 (E.D. Tex. 2019); *Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517 (Tex. App. 2020). Lastly, *Reynolds v. Sanchez Oil and Gas Corp.*, which is a recent Court of Appeals of Texas decision, recognizes that "TUTSA preempts only conflicting common law remedies, but it does not preempt a common law claim that addresses harm separate from the trade secret misappropriation. . . . Under the plain language of TUTSA,[] confidential information is not necessarily a trade secret." No. 01-18-00940-CV, 2023 WL 8262764, at *17-18 (Tex. App.— Houston [1st Dist.] 2023).

As such, both PCA's trade secret claims and its claims for conversion and unjust enrichment should be allowed to remain in the case, and the Motion to Dismiss should be denied in its entirety.

> **4. PCA Should be Allowed to Amend the Complaint to Specify that its Claims for Conversion and Unjust Enrichment are Grounded in Technip Energies' Unlawful Retention of Use of PCA's Confidential Information.**

To the extent this Court finds that PCA inadequately specified that its claims for conversion and unjust enrichment are based upon Technip Energies' unlawful use of PCA's confidential

information, PCA should be allowed to amend the Complaint to make that clear. The Federal Rules of Civil Procedure provide that leave to amend the complaint "should be freely give[n] when justice so requires." Fed. R. Civ. P. 15(a); *see Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 179–80 (5th Cir. 1977); *Murthy v. Abbott Labs.*, No. 4:11-CV-105, 2012 WL 6020157, at *3 (S.D. Tex. Dec. 3, 2012). The Fifth Circuit has recently recognized that:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Calhoun v. Collier*, 78 F. 4th 846, 854 (5th Cir. 2023) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Murthy*, 2012 WL 6020157, at *3 ("'[G]ranting leave to amend is especially appropriate ... when the trial court has dismissed the complaint for failure to state a claim.' . . . [A] Court should generally 'afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.'") ((quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

PCA has sufficiently pleaded that its conversion and unjust enrichment claims are meant to address misappropriation of its confidential information improperly utilized by Technip Energies. However, to the extent this Court finds that PCA has not made that sufficiently clear (which it should not), the Court should grant PCA leave to amend the Complaint to make clear that the conversion and unjust enrichment claims are directed to misappropriation of PCA's confidential information. Granting such leave will not cause any undue delay as Technip Energies

has just recently responded to the Complaint on January 24, 2025, Dkt. Nos. 15, 16, and the initial pretrial and scheduling conference has not yet occurred. *See* Dkt. No. 4. This request for leave is not pursuant to any bad faith or dilatory motive. This is PCA's first request to amend its claims, and the case is at an early stage.

An amendment here would also not be futile because courts in this District hold that common law claims based on misappropriation of confidential information are not preempted by TUTSA. *See Topstone*, 729 F. Supp. 3d at 709; *DHI*, 397 F. Supp. 3d at 923; *Forum Energy*, 2022 WL 1103078, at *8. As such, PCA should be granted leave to amend the Complaint to make clear (to the extent it is not already) that its conversion and unjust enrichment claims are meant to address misappropriation of its confidential information improperly used by Technip Energies to the extent any of that information is found not to rise to the level of trade secret. *See Calhoun*, 78 F.4th at 854 ("leave to amend shall be freely given when justice so requires; this mandate is to be heeded.") (quoting *Foman*, 371 U.S. at 182); *Griggs*, 563 F.2d at 180 ("Granting leave to amend is especially appropriate, in cases such as this, when the trial court has dismissed the complaint for failure to state a claim.").

## VI.   CONCLUSION

For the foregoing reasons, Technip Energies' 12(b)(6) Motion to Dismiss should be denied in its entirety. Alternatively, PCA should be granted leave to amend the Complaint to clarify that its claims for conversion and unjust enrichment are to rectify Technip Energies' misappropriation of its confidential information.

Dated: February 26, 2025

Respectfully submitted,

*/s/ Nicholas W. Armington*
Nicholas W. Armington (*pro hac vice*)
Massachusetts State Bar No. 687843
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: 617-456-8000
narmington@princelobel.com

*Attorney-in-Charge for Plaintiff Crosby Legacy
Company, LLC, d/b/a Philip Crosby Associates*

OF COUNSEL

RUSTY HARDIN & ASSOCIATES, LLP
Russell Hardin, Jr.
Texas Bar No. 08972800
Federal I.D. No. 19424
Megan C. Moore
Texas Bar No. 24054322
Federal I.D. No. 963966
Kendall Speer
Texas Bar No. 24077954
Federal I.D. No. 2783343

5 Houston Center
1401 McKinney Street, Suite 2250
Houston, TX 77010
Tel: (713) 652-9000
rhardin@rustyhardin.com
mmoore@rustyhardin.com
kspeer@rustyhardin.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

*/s/ Megan C. Moore*
Megan C. Moore

18