**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CROSBY LEGACY COMPANY, LLC, d/b/a PHILIP CROSBY ASSOCIATES, | ) ) ) ) | |
| *Plaintiff*, | ) ) | Civil Action No.: 4:24-cv-04480-ASH |
| v. | ) ) | |
| TECHNIP ENERGIES NV, and TECHNIP ENERGIES USA, INC., | ) ) ) | JURY TRIAL DEMANDED |
| *Defendants*. | ) ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT TECHNIP ENERGIES NV'S**
**MOTION TO DISMISS PER FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

**TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 2

    A.   PCA's Quality Management and Consulting Business ................................... 2

    B.   PCA's Work for FMC and the Confidential PCA Licensed Materials Provided
         to FMC Under the 2014 Agreement ............................................................... 3

    C.   FMC's Impact Quality Program and Technip Energies' Unlawful Acquisition
         and Use of that Program Following its Establishment ................................... 3

    D.   Technip Energies' Numerous Projects in Texas and Elsewhere in the United
         States that are Funded in Part by the U.S. Department of Energy ................. 4

    E.   Technip Energies' Numerous U.S. Patent and Trademark Assets ................. 8

III.  NATURE AND STAGE OF PROCEEDINGS ....................................................... 9

IV.   LEGAL STANDARD ........................................................................................... 9

V.    STATEMENT OF THE ISSUES TO BE RULED UPON .................................... 11

VI.   ARGUMENTS AND AUTHORITIES ................................................................. 12

    A.   Technip Energies has Sufficient Minimum Contacts with Texas ............... 12

    B.   PCA's Causes of Action Arise out of Technip Energies' Contacts with Texas ........... 13

    C.   Exercise of Personal Jurisdiction over Technip Energies is Fair and Reasonable ...... 14

    D.   Technip Energies is Under the Personal Jurisdiction of this Court under
         Fed. R. Civ. P. 4(k)(2) .................................................................................. 16

    E.   TUTSA Does not Preempt PCA's Conversion and Unjust Enrichment Claims
         against Technip Energies ............................................................................... 17

VII.  CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Unione Mediterranea Di Sicurta*,
   364 F.3d 646 (2004) ..................................................................................11, 16, 17

*AMID, Inc v. Meic Alert Found. United States, Inc.*,
   241 F. Supp. 3d 788 (S.D. Tex. 2017) ...................................................... 19

*Aziz v. MMR Group, Inc.*,
   Civil Action No. H-17-3907, 2018 WL 3439637 (S.D. Tex. Jul. 17, 2018) ............................ 10

*Bates Energy Oil & Gas v. Complete Oilfield Servs.*,
   361 F. Supp. 3d 633 (W.D. Tex. 2019)...................................................... 12

*Block v. United States*,
   66 Fed. Cl. 68 (Fed.Cl. 2005) .................................................................. 13

*Carmona v. Leo Ship Mgmt., Inc.*,
   924 F.3d 190 (5th Cir. 2019) ..................................................................... 9

*Defense Distributed v. Grewel*,
   971 F.3d 485 (5th Cir. 2020) ...............................................9, 10, 11, 12, 13

*DHI Grp., Inc. v. Kent*,
   397 F. Supp. 3d 904 (S.D. Tex. 2019)...................................................... 19

*Ferris Mfg. Corp. v. Thai Care Co. Ltd.*,
   Civil Action No. 4:17-cv-01024-O, 2018 WL 6930105 (N.D. Tex. May 31, 2018).......... 13, 14

*Forum Energy Techs., Inc. v. Jason Oil & Gas Equip., LLC*,
   Civil Action No. H-20-3768, 2022 WL 1103078 (S.D. Tex. Apr. 13, 2022) ..................... 18, 19

*Frost v. Catholic Univ. of Am.*,
   960 F. Supp. 2d 226 (D.D.C. 2013)).......................................................... 10

*Griffin v. Fedak*,
   No. 1:13-CV-311, 2013 WL 6503302 (E.D. Tex. Dec. 10, 2013)............................................ 10

*Guidry v. U.S. Tobacco Co., Inc.*,
   188 F.3d 619 (5th Cir.1999) .................................................................. 10, 12

*In re Norplant Contraceptive Prods. Liability Litig.*,
   886 F. Supp. 592 (E.D. Tex. 1995)............................................................ 15

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
   256 F.3d 548 (7th Cir. 2001) .................................................................. 17

*Jerome Stevens Pharm., Inc. v. FDA*,
   402 F.3d 1249 (D.C. Cir. 2005) ............................................................ 10

*Kevlin Serv., Inc. v. Lexington State Bank*,
   46 F.3d 13 (5th Cir. 1995) .................................................................... 10

*Moon v. City of El Paso*,
   906 F.3d 352 (5th Cir. 2018) ................................................................ 12

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*,
   310 F.3d 374 (5th Cir. 2002) ................................................................ 11

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ................................................................ 10

*Quick Techs., Inc. v. Sage Group PLC*,
   313 F.3d 338 (5th Cir. 2002) ................................................................ 10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ............................................................................. 17

*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) ........................................................ 10, 15

*Simmons v. United States*,
   No. 2:10-CV-360-TJW-CE, 2011 WL 4399823 (E.D. Tex. 2011) ............ 13

*Stroman Realty, Inc. v. Wercinski*,
   513 F.3d 476 (5th Cir. 2008) .......................................................... 9, 14

*Taishan-Gypsum Co. v. Gross*,
   753 F.3d 521 (5th Cir. 2014) ........................................................ 14, 15

*TPI Cloud Hosting, Inc. v. Keller Williams Realty Inc.*,
   No. A-19-CV-00808-JRN, 2020 WL 4708713 (W.D. Tex. Jun. 18, 2020) ............................... 18

*World Tanker Carriers Corp. v. MV Ya Mawlaya*,
   99 F.3d 717 (5th Cir. 1996) .................................................................. 11

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ............................................................................. 17

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 ................................................................... 9

**Rules**

Fed. R. Civ. P. 4(k)(2) ...............................................................................2, 11, 12, 16, 17

Fed. R. Civ. P. 12(b)(2) .............................................................................................10, 11

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 9, 12

Plaintiff Crosby Legacy Company, LLC, d/b/a Philip Crosby Associates ("PCA") files this response in opposition to the Motion to Dismiss Per Fed. R. Civ. P. 12(b)(2) and, Alternatively, Fed. R. Civ. P. 12(b)(6) and Brief in Support (Dkt. No. 16) ("Motion to Dismiss") filed by Defendant Technip Energies NV.

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Court has specific personal jurisdiction over Defendant Technip Energies NV ("Technip Energies") through at least the numerous large-scale projects Technip Energies is pursuing in Texas, each of which leverage Technip Energies' companywide quality management program that is based upon the confidential and trade secret information misappropriated from PCA. These Texas projects have been repeatedly and publicly touted by Arnaud Pieton, Technip Energies' CEO, and Loic Chapuis, Technip Energies' COO—the very corporate officers that Technip Energies names in its declaration supporting its Motion to Dismiss. Specific personal jurisdiction exists over Technip Energies because of its business in Texas forming the basis of this dispute, not merely because it has a subsidiary in Texas.

Not only does Technip Energies have extensive and continuing contacts with Texas, but it also has extensive contacts with the United States as a whole. Technip Energies is currently pursuing projects not only in Texas, but also in Louisiana, and in U.S. controlled offshore waters. Some of these projects are currently financed by grants from the United States government through the U.S. Department of Energy. Technip Energies also benefits from the robust intellectual property protections the United States provides. For example, Technip Energies has approximately sixty discrete patent and trademark assets registered with the U.S. Patent and Trademark Office, thereby enjoying U.S. protection for its own intellectual property rights, while at the same time violating PCA's intellectual property rights by unlawfully utilizing PCA's confidential and trade secret material. Thus, this Court alternatively has personal jurisdiction over Technip Energies pursuant

to Federal Rule of Civil Procedure 4(k)(2), which provides for personal jurisdiction over a defendant where it has sufficient contacts with the United States to satisfy due process concerns but has insufficient contacts with any single state. Because this Court has personal jurisdiction over Technip Energies, the 12(b)(2) Motion to Dismiss should be denied in its entirety.

The Court should also deny Technip Energies' Motion to Dismiss pursuant to Rule 12(b)(6). Technip Energies' 12(b)(6) Motion raises identical arguments to those made in Technip Energies USA, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 15),[1] and for the same reasons set forth in PCA's Opposition to that motion, the Rule 12(b)(6) Motion to Dismiss should also be denied in its entirety.

## II.    FACTUAL BACKGROUND

### A.    PCA's Quality Management and Consulting Business

PCA is a management consulting firm that works with its clients to improve quality within their business and manufacturing processes. Dkt. No. 1 ("Compl.") ¶ 14. To accomplish this, PCA trains its clients' employees in PCA's methods to remove defects from ongoing business and manufacturing processes, often creating custom quality management programs for its clients based upon PCA's quality management principles that are specifically tailored to the needs of the particular client. *Id.* PCA's approach, and the implementation of its teachings and methods, generates measurable and tangible results for its clients. *Id.* For example, PCA has found that most businesses waste approximately 25–40% of their operating costs in the form of inefficiencies resulting from internal quality management breakdowns, including because of internal quality-related requirements not being clearly communicated, or consistently monitored and achieved. *Id.* ¶¶ 16, 14.

---

[1] *See* Dkt. No. 16 at 13 ("T.EN NV accordingly incorporates the preemption arguments discussed in T.EN USA's Motion and briefly summarizes them here.").

**B.      PCA's Work for FMC and the Confidential PCA Licensed Materials Provided to FMC Under the 2014 Agreement**

In 2008 and 2009, FMC Technologies, Inc. ("FMC") engaged PCA to assist two of its business units to reduce inefficiencies and costs by improving their quality management programs. *Id.* ¶ 18. That work was so effective, that FMC eventually requested that PCA grant FMC a company-wide license for use of PCA's methods, and in 2014 PCA granted FMC such a license (the "2014 Agreement") to use the Licensed PCA Materials. *Id.* ¶¶ 18-19, Ex. A § 1, Appendix 1. The 2014 Agreement granted FMC a limited license to the Licensed PCA Materials but made clear that such materials "including the proprietary techniques and approaches" contained therein, "shall remain the exclusive property of PCA." *Id.* Ex. A, § 1, Appendix 1. The Licensed PCA Materials are PCA's confidential and trade secret information that Technip Energies has knowingly and unlawfully utilized for the basis of its companywide quality management programs. *Id.* ¶ 1.

**C.      FMC's Impact Quality Program and Technip Energies' Unlawful Acquisition and Use of that Program Following its Establishment**

Using the Licensed PCA Materials, FMC created and launched its Impact Quality program which was FMC's internal quality management program used throughout the entire organization. *Id.* ¶ 24. Upon FMC's merger with Technip S.A. ("Technip") in January 2017 to create TechnipFMC plc ("TechnipFMC"), TechnipFMC continued to use the Impact Quality program, despite not having obtained PCA's written consent to do so. *Id.* ¶¶ 24–26.[2] TechnipFMC subsequently spun off certain business units to establish Defendant Technip Energies in 2021. *Id.* ¶ 29; Dkt. No. 16 at 1 ("FMC Technologies, Inc. [] merged with Technip S.A. and became

---

[2] A Change of Control provision of the 2014 Agreement provided that upon a change of control, as defined in the 2014 Agreement, "the newly controlling entity must obtain prior written consent from PCA to use the Licensed PCA Materials . . ." *Id.* Ex. A, § 10. TechnipFMC's continued unlawful use of the PCA Licensed Materials is the subject of an ongoing litigation in Massachusetts, captioned *Crosby Legacy Company, LLC d/b/a Philip Crosby Associates v. TechnipFMC plc*, 1:18-cv-10814-NMG (D. Mass.). *See* Compl. ¶¶ 26–28.

TechnipFMC plc, which later spun off T.EN NV."). When Technip Energies spun off from TechnipFMC, it took with it TechnipFMC's Impact Quality program, which is based upon and contains PCA's confidential and trade secret information, including the confidential and trade secret information found within the Licensed PCA Materials. Compl. ¶ 30. Technip Energies has unlawfully been using the PCA confidential and trade secret information throughout the entirety of its organization since its inception and continues to unlawfully use that information to this day. *Id.*

For example, Technip Energies touts "Impact Quality" as its company-wide "quality leadership program designed to help us deliver quality work on time and on budget." *Id.* ¶ 32. Indeed, Technip Energies' Impact Quality program—based upon PCA's confidential and trade secret material—"places an emphasis on the fact that **everyone** at Technip Energies has a role to play in delivering excellence and promoting sustainable innovation." *Id.* (emphasis added). In other words, everyone at Technip Energies is to leverage Technip Energies' companywide Impact Quality program so that "**everyone** at Technip Energies has the chance to make a real difference in supporting [Technip Energies'] clients." *Id.* (emphasis added).

### D.    Technip Energies' Numerous Projects in Texas and Elsewhere in the United States that are Funded in Part by the U.S. Department of Energy

Since its inception, Technip Energies has used the Impact Quality program—which is directed to "**everyone** at Technip Energies"—across the entirety of its organization's operations, including to ensure high quality standards in all of Technip Energies' projects worldwide. *See* Compl. ¶¶ 30, 32–33. Technip Energies' assertion that is has "no connections to Texas whatsoever" is flatly incorrect. Motion to Dismiss at 1. Technip Energies touts in press releases, its website, and in its annual reports a multitude of major projects it has pursued in Texas since its inception in 2021, excerpts of which are highlighted below. Technip Energies' companywide quality

management program—that incorporates PCA's confidential and trade secret information—is

utilized with respect to each of these projects:

- May 25, 2022 – "Technip Energies and Samsung Engineering Awarded Pre-FID Contract, Form Joint Venture for Project Design and Delivery for Texas LNG in the USA":

> **Technip Energies (<u>PARIS:TE</u>)**[3] and Samsung Engineering have been awarded a Pre-FID (Final Investment Decision) Engineering contract for the **Texas LNG project in Brownsville, Texas, USA**. Through a joint venture with Samsung Engineering, **Technip Energies has been appointed Lead project contractor charged with project design and delivery.** . . . **Loic Chapuis,**[4] SVP Gas and Low-Carbon Energies, Technip Energies, stated, "We are pleased to have been selected by Texas LNG to lead the FEED (front-end engineering design) and project delivery and to integrate our modular SnapLNG™ solution, which is well-suited for the North America market.

*See* Declaration of Nicholas W. Armington in Support of Plaintiff's Opposition to Defendant

Technip Energies NV's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6)

("Armington Decl.") at ¶ 2, Ex. A (emphasis added); *see also id.* ¶ 3, Ex. B at 35.

- December 21, 2022 – "Technip Energies Awarded a Proprietary Equipment Contract by Chevron Phillips Chemical and QatarEnergy for the Golden Triangle Polymers Ethane Cracker":

> **Technip Energies (<u>PARIS:TE</u>)** [] has been awarded a contract for the supply of proprietary cracking furnaces for the 2,000 kta ethane cracker for the Golden Triangle Polymers project, a joint venture between Chevron Phillips Chemical (CPChem) and QatarEnergy, **along the Gulf Coast in Orange, Texas**.

*Id.* ¶ 4, Ex. C (emphasis added); *see also id.* ¶ 3, Ex. B at 38.

- January 31, 2023 – "Technip Energies Awarded Contract for FEED of World's Largest Low-Carbon Hydrogen Project at ExxonMobil's Baytown, Texas Facility"

---

[3] Technip Energies admits in the Declaration of Viorica Vahnovan in Support of Technip Energies N.V.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) & 12(b)(6) ("Vahnovan Declaration") that Technip Energies' "ordinary shares trade on the Euronext Paris Stock Exchange." Dkt. No. 16-1 at 1. Technip Energies' trading symbol on the Euronext Paris Stock Exchange is "TE." *See* Armington Decl. at ¶ 19, Ex. R.

[4] Technip Energies admits in the Vahnovan Declaration that Loic Chapuis is now Technip Energies' Chief Operating Officer. Dkt. No. 16-1 at 2.

> **Technip Energies (<u>PARIS: TE</u>)** [] has been awarded a contract for
> the front-end engineering and design (FEED) of the world's Largest
> Low-carbon hydrogen project for ExxonMobil in **Baytown, Texas,
> USA**. . . . **Loic Chapuis**, SVP Gas and Low-Carbon Energies of
> Technip Energies, commented "We are very excited to be engaged
> with ExxonMobil Low Carbon Solutions to help design their low-
> carbon hydrogen production facility. . . ."

*Id.* ¶ 5, Ex. D (emphasis added); *see also id.* ¶ 3, Ex. B at 52.

- March 9, 2023 – "Technip Energies, Shell Catalysts & Technologies and Zachry Group
  Selected for Calpine's Carbon Capture Unit Project in Texas"

> **Technip Energies (<u>PARIS:TE</u>)**, together with Shell Catalysts &
> Technologies and Zachry Group, have been awarded a Front-End
> Engineering and Design (FEED) contract for a carbon capture unit
> project in **Baytown, Texas, USA**.

*Id.* ¶ 6, Ex. E (emphasis added); *see also id.* ¶ 7, Ex. F at 34.

- June 1, 2023 – "Technip Energies, LyondellBasell and Chevron Phillips Chemical Sign
  MOU for Electric Cracking Ethylene Furnace"

> **Technip Energies**, LyondellBasell and Chevron Phillips Chemical
> (CPChem) announced the signing of a Memorandum of
> Understanding (MoU) for the design, construction and operation of
> a demonstration unit for Technip Energies' electric steam cracking
> furnace technology (eFurnace by T.EN™) to produce olefins. The
> demonstration **unit will be located at LyondellBasell's site in
> Channelview, Texas, USA**, and is designed to prove the technology
> at industrial scale. . . . **Arnaud Pieton, CEO of Technip Energies**,[5]
> stated: "We are delighted to team up with LyondellBasell and
> CPChem to bring the eFurnace by T.EN™ to fruition. . . ."

*Id.* ¶ 8, Ex. G (emphasis added); *see also id.* ¶ 7, Ex. F at 58.

- July 29, 2024 – "Technip Energies awarded a proprietary equipment contract by Chevron
  Phillips Chemical for the first complete implementation of the low-CO2 cracking furnace
  technology"

> **Technip Energies (<u>PARIS:TE</u>)** has been awarded an Engineering
> and Procurement contract by Chevron Phillips Chemical (CPChem)

---

[5] Technip Energies admits in the Vahnovan Declaration that Arnaud Pieton is Technip Energies' Chief
Executive Officer. Dkt. No. 16-1 at 2.

for the supply of a proprietary Low Emission Cracking Furnace in an existing olefins unit at its facility **in Sweeny, Texas**.

*Id.* ¶ 9, Ex. H (emphasis added).

Technip Energies also disclosed in its 2022 Form 20-F filed with the U.S. Securities and Exchange Commission that "[a] number of material office facilities use by [Technip Energies] are located . . . internationally in the United States," reflecting that Technip Energies has 32,510 square meters of office space in Houston, Texas. *Id.* ¶ 17, Ex. P at 13. Beyond Texas, Technip Energies has a multitude of other projects within the United States, including projects funded by the United States Department of Energy:

- March 25, 2024 – "Technip Energies and LanzaTech Selected by the US Department of Energy to Receive $200M Investment for Breakthrough, Replicable Decarbonized Ethylene Commercial Facility"

    > Today, **Technip Energies (__PARIS: TE__)** and LanzaTech Global, Inc. (NASDAQ: LNZA) were selected by the **U.S. Department of Energy (DOE) Office of Clean Energy Demonstrations to begin award negotiations for up to $200 million** in Bipartisan Infrastructure Law and Inflation Reduction Act (IRA) funding as part of the Industrial Demonstrations Program (IDP). . . . **Arnaud Pieton, CEO of Technip Energies**, stated: "We are extremely proud to have been selected by the DOE for this significant award consideration. . . ."

*Id.* ¶ 10, Ex. I (emphasis added); *see also id.* ¶ 11, Ex. J at 4.

- May 31, 2024 – "Technip Energies' unique INO15 technology wins US floating offshore wind award"

    > This latest prize is part of the FLOWIN initiative, which is designed to encourage technology development and industrialisation [sic] of floating offshore wind for cost-effective domestic manufacture and deployment of **gigawatt-scale floating wind farms in US waters**. As a result of **Technip Energies' win, the company will receive a cash prize of $450,000 and $100,000 worth of technical support from Department of Energy National Laboratories**.

*Id.* ¶ 12, Ex. K (emphasis added); *see also id.* ¶ 7, Ex. F at 32.

7

- June 6, 2024 – "Technip Energies and Turner Industries Awarded Contract by ExxonMobil for Louisiana Carbon Capture and Sequestration Project"

> **Technip Energies (<u>PARIS:TE</u>)**, in consortium with Turner Industries, has been awarded the Engineering, Procurement, and Construction (EPC) contract by ExxonMobil Low Carbon Solutions Onshore Storage LLC. . . . The contract covers ExxonMobil Low Carbon Solutions' plans for the delivery of a Carbon Capture, Utilization & Storage (CCUS) system that could condition, compress, and transport, for eventual storage, up to 800,000 metric tons per year of $CO_2$ from **a manufacturing plant located in Convent, Louisiana** . . . .

*Id.* ¶ 13, Ex. L (emphasis added); *see also id.* ¶ 11, Ex. J at 9.

   **E.**  **Technip Energies' Numerous U.S. Patent and Trademark Assets**

   Beyond the numerous projects Technip Energies is pursuing in Texas, Louisiana, and in U.S. controlled offshore waters, Technip Energies also enjoys the protection of U.S. intellectual property law through its approximately sixty discrete patent and trademark assets. Technip Energies has at least twenty-five granted U.S. patents or pending U.S. patent applications. *See* Armington Decl. ¶¶ 14–15, Exs. M and N. Technip Energies is also the owner and registrant of at least thirty-three federally registered trademarks, including the marks "TECHNIP ENERGIES" and "T.EN TECHNIP ENERGIES." *See id.* ¶ 16, Ex. O. Each of these patent and trademark assets are registered to "Technip Energies France," with the address "2126 Boulevard de la Defense, Immeuble Origine - CS 10266 F-92741 **Nanterre** Cedex FRANCE,"[6] *see id.*, which is the same address as Defendant Technip Energies NV in this matter. *See id.* ¶ 18, Ex. Q at 9 (emphasis added).

---

[6] Technip Energies admits in the Vahnovan Declaration that Technip Energies is "headquartered in Nanterre, France." Dkt. No. 16-1 at 2.

## III.    NATURE AND STAGE OF PROCEEDINGS

PCA filed this lawsuit on November 14, 2024. *See* Compl. On January 24, 2025, Technip Energies filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6),[7] arguing that this Court does not have personal jurisdiction over Technip Energies and that PCA's conversion and unjust enrichment claims are preempted by PCA's Texas Uniform Trade Secrets Act ("TUTSA") claim. This Court has personal jurisdiction over Technip Energies, and PCA's conversion and unjust enrichment claims are not preempted because they are grounded in Technip Energies' misappropriation of confidential information.

## IV.    LEGAL STANDARD

"Personal jurisdiction exists where the forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process." *Defense Distributed v. Grewel*, 971 F.3d 485, 490 (5th Cir. 2020) (citing *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019)). "Because Texas's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Id.* Texas' long-arm statute permits the exercise of specific jurisdiction over any defendant "doing business" in the state, including defendants who "commit[ ] a tort in whole or in part in th[e] state." *Id.* (quoting Tex. Civ. Prac. & Rem Code Ann. § 17.042).

Personal jurisdiction may be either general or specific. *Id.* "The constitutional requirement for specific jurisdiction is that the defendant has 'minimum contacts' with the forum state such that imposing a judgment would not 'offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008)). The Fifth Circuit

---

[7] Technip Energies USA, Inc. and Technip Energies NV filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) with the identical allegations that PCA's conversion and unjust enrichment claims are preempted by TUTSA. Dkt. Nos. 15, 16. Technip Energies NV's Rule 12(b)(6) Motion merely "incorporates the preemption arguments discussed in [Technip Energies USA, Inc's] Motion." Dkt. No. 16 at 13.

has set forth a "three-step analysis" for determining specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.* at 490–91 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

While "[t]he plaintiff bears the burden of establishing the court's personal jurisdiction over [a] nonresident defendant," *Kevlin Serv., Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995), in making this determination, the court must "accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor[,]" *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001), and "may consider the contents of the record before the court at the time of the motion, including affidavits . . . ." *See also Aziz v. MMR Group, Inc.*, Civil Action No. H-17-3907, 2018 WL 3439637, at *2 (S.D. Tex. Jul. 17, 2018) (citing *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)) (cleaned up); *Griffin v. Fedak*, No. 1:13-CV-311, 2013 WL 6503302, at *4 n.2 (E.D. Tex. Dec. 10, 2013) ("When considering a 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court may consider . . . affidavits and exhibits of record.") (citing *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999)); *Frost v. Catholic Univ. of Am.*, 960 F. Supp. 2d 226, 231 (D.D.C. 2013) ("[T]he Court need not confine itself to only the allegations in the complaint, 'but may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'") (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). When "the district court decides the motion to dismiss without holding an

evidentiary hearing, [the plaintiff] must make only a prima facie showing of the facts on which jurisdiction is predicated." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

Further, pursuant to Federal Rule of Civil Procedure 4(k)(2), when a claim "arises under federal law . . . a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Rule 4(k)(2) "was enacted to fill an important gap in the jurisdiction of federal courts in cases arising under federal law[, to address the situation where] a defendant [has] sufficient contacts with the United States as a whole to satisfy due process concerns, [but has] insufficient contacts with any single state, [such that it] would not be amenable to service by a federal court sitting in that state . . . Rule 4(k)(2) was adopted in response to *this* problem of a gap in the courts' jurisdiction . . ." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (2004) (quoting *World Tanker Carriers Corp. v. MV Ya Mawlaya*, 99 F.3d 717, 721–22 (5th Cir. 1996)) (emphasis original).

## V. STATEMENT OF THE ISSUES TO BE RULED UPON

1.     Whether this Court has specific personal jurisdiction over Technip Energies and/or whether this Court has personal jurisdiction over Technip Energies under Federal Rule of Civil Procedure 4(k)(2). This Court has specific personal jurisdiction over Technip Energies by way of Technip Energies' unlawful use of PCA's confidential and trade secret material in this State with respect to the numerous large-scale projects Technip Energies is pursuing in Texas. The standard of review for dismissing a case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is de novo. *Grewel*, 971 F.3d at 490.

2.     Whether PCA's conversion and unjust enrichment claims against Technip Energies are preempted by PCA's claim for misappropriation of trade secrets under TUTSA. PCA's

11

conversion and unjust enrichment claims are not preempted because they are directed to Technip Energies' misappropriation of PCA's confidential information, as opposed to its trade secret information. The standard of review for dismissing a case for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is de novo. *See Moon v. City of El Paso*, 906 F.3d 352, 357 (5th Cir. 2018).

## VI.    ARGUMENTS AND AUTHORITIES

This Court has personal jurisdiction over Technip Energies because Technip Energies has sufficient minimum contacts with Texas, PCA's causes of action arise out of those contacts, and exercise of personal jurisdiction is fair and reasonable. This Court also has personal jurisdiction over Technip Energies under Federal Rule of Civil Procedure 4(k)(2) because of Technip Energies' contacts with the United States as a whole. Further, PCA's conversion and unjust enrichment claims are not preempted by TUTSA because those common law claims are plead in the alternative and based upon Technip Energies' misappropriation of PCA's confidential information.

### A.    Technip Energies has Sufficient Minimum Contacts with Texas.

The first step of the Fifth Circuit's "three-step" specific jurisdiction analysis examines "whether the defendant has minimum contacts with the forum state." *Grewel*, 971 F.3d 485 at 490–91. "When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses." *Guidry*, 188 F.3d at 628 (collecting cases); *see also Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 647 (W.D. Tex. 2019) ("[S]pecific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum, if the defendant purposefully availed himself of the privilege

of conducting activities in the state, thereby invoking the benefits and protections of the forum's laws.").

In this case, Technip Energies has sufficient minimum contacts with Texas because it committed (and continues to commit) torts in Texas. PCA alleges that Technip Energies has committed the torts of at least conversion and trade secret misappropriation with respect to the unlawful use of PCA's confidential and trade secret information, respectively, in Technip Energies' companywide quality management programs. *See* Compl. ¶¶ 35-53; *see also Simmons v. United States*, No. 2:10-CV-360-TJW-CE, 2011 WL 4399823, at *2 (E.D. Tex. 2011) ("It is[] well-settled that a claim for conversion of property or for misappropriation of trade secrets sounds in tort.") (quoting *Block v. United States*, 66 Fed. Cl. 68, 72 (Fed. Cl. 2005) (cleaned up)). Technip Energies' quality management program is a companywide program—directed to "**everyone** at Technip Energies"—and is thus used on all projects pursued by Technip Energies, including the projects Technip Energies is pursuing in Texas. *See* Compl. ¶ 32. According to its annual reports and Technip Energies' own press releases, Technip Energies has pursued a multitude of projects in Texas since its inception. *See* Section II.D., *supra*. By using PCA's confidential and trade secret information without permission in connection with its numerous projects in Texas, Technip Energies has committed at least the torts of conversion and trade secret misappropriation in Texas. As such, Technip Energies has sufficient minimum contacts with Texas to ground this Court's personal jurisdiction over Technip Energies.

**B.     PCA's Causes of Action Arise out of Technip Energies' Contacts with Texas.**

The second step of the "three-step" specific jurisdiction analysis examines "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Grewel*, 971 F.3d at 490–91. "The proper focus of this step in the analysis is on the 'relationship among the defendant, the forum, and the litigation.'" *Ferris Mfg. Corp. v. Thai Care Co. Ltd.*, Civil

Action No. 4:17-cv-01024-O, 2018 WL 6930105, at *4 (N.D. Tex. May 31, 2018) (quoting *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008)).

Here, the relationship amongst Technip Energies, Texas, and this lawsuit is clear. PCA's causes of action arise out of Technip Energies' contacts with Texas because PCA alleges that Technip Energies uses PCA's confidential and trade secret information in its companywide quality management program, which program is implemented in Technip Energies' projects in Texas. Specifically, PCA alleges that "[w]hen Technip Energies was spun off from TechnipFMC[,] Technip Energies took with it TechnipFMC's Impact Quality program, which is based upon and contains [PCA's confidential and trade secret information]." Compl. ¶ 30. "Technip Energies has been using TechnipFMC's Impact Quality program since its inception and has greatly benefitted from that use as utilization of those programs have provided to Technip Energies robust quality management systems and processes," across its entire company, including in relation to the numerous large-scale projects Technip Energies is pursuing in Texas. *Id.*; *see* Section II.D., *supra*. Because Technip Energies uses its company-wide quality management program that is unlawfully based upon PCA's confidential and trade secret information to improve the quality of its processes in its large-scale projects in Texas, Technip Energies' conversion and trade secret misappropriation allegations arise out of its numerous contacts with Texas.

## C. Exercise of Personal Jurisdiction over Technip Energies is Fair and Reasonable.

The third-step in the specific jurisdiction inquiry "asks whether jurisdiction would comport with fair play and substantial justice," by examining five factors: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Taishan-Gypsum Co. v. Gross*, 753 F.3d 521, 544 (5th

Cir. 2014). At this step, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Technip Energies cannot meet this burden because each of the five factors weigh toward this Court's having personal jurisdiction over it.

First, litigating in Texas puts a limited burden on Technip Energies given (a) the number of projects that the company is directly pursuing in Texas, (b) that Technip Energies' employees likely travel to Texas on a regular basis with respect to those projects, and (c) Technip Energies' employees likely travel to and communicate with its subsidiary Technip Energies USA, Inc. with respect to other business operations of the company. *See* Dkt. No. 16-1; Section II.D., *supra*.

Second, Texas has an interest in the outcome of this litigation because it has an interest in providing a forum where misappropriation of confidential and trade secret information can be remedied, especially where such misappropriation has taken place, in part, in Texas.

Third, Texas is a convenient forum for PCA because it can address the unlawful conduct of both Defendants in one forum.

Fourth, the judicial system has an interest in addressing both Defendants' misconduct in a single case in a single forum because it serves judicial efficiency.

Fifth and lastly, allowing PCA to address Defendants' misappropriation of its confidential and trade secret information in a single forum of its choosing where at least a significant portion of the relevant discovery resides furthers the fundamental social policy of allowing an aggrieved plaintiff an efficient avenue to remedy wrongdoing against it. *See In re Norplant Contraceptive Prods. Liability Litig.*, 886 F. Supp. 592, 596 (E.D. Tex. 1995) ("In this case, Plaintiff has a strong interest in securing convenient and effective relief. The Plaintiff's claims against the Defendant are the same as her claims against all parties to this lawsuit, and the Texas forum will bring all

parties to this lawsuit together in one courtroom for a single resolution. The Fifth Circuit has held

that an identical interest comported with the fair play requirement of the Due Process Clause. . . .

Additionally, from an efficiency standpoint, it is a great advantage to the judicial system itself to

have the claim against Defendant litigated along with identical claims against the other defendants

to this lawsuit. For all of the above reasons, this court's exercise of personal jurisdiction over

Defendant would not offend traditional notions of fair play and substantial justice."). For these

reasons, including that Technip Energies failed to address any of these factors in their Motion, *see*

Dkt. No. 16 at 13, finding that this Court has personal jurisdiction over Technip Energies would

comport with fair play and substantial justice.

### D. Technip Energies is Under the Personal Jurisdiction of this Court under Fed. R. Civ. P. 4(k)(2).

Additionally (or alternatively) this Court has personal jurisdiction over Technip Energies

pursuant to Federal Rule of Civil Procedure 4(k)(2). Under Rule 4(k)(2), "filing a waiver of service

establishes personal jurisdiction over a defendant," in cases "aris[ing] under federal law," if "the

defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and "exercising

jurisdiction is consistent with the United States Constitution and laws." Each of these requirements

is satisfied here as to Technip Energies.

First, there is no dispute that Technip Energies filed a waiver of service in this matter, *see*

Dkt. No. 7, and this case arises under federal law by way of PCA's claim that Technip Energies

has violated the federal Defend Trade Secrets Act. Compl. ¶¶ 35-41.

Second, because Technip Energies has not conceded to jurisdiction in any other state, Rule

4(k)(2) can be used to confer jurisdiction in this Court. *See Adams*, 364 F.3d at 651 ("We agree

with the Seventh Circuit, that a piecemeal analysis of the existence *vel non* of jurisdiction in all

fifty states is not necessary. Rather, so long as a defendant does not concede to jurisdiction in

another state, a court may use 4(k)(2) to confer jurisdiction.") (citing *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).

Lastly, Technip Energies has more than sufficient ties to the United States as a whole to satisfy constitutional due process. *See id*. Technip Energies has pursued at least nine major projects in Texas and Louisiana continuously and since its inception. *See* Section II.D., *supra*; Armington Decl. ¶¶ 2–11, Exs. A–J. Indeed, the corporate officers that Technip Energies names in the Vahnovan Declaration—CEO Arnaud Pieton and COO Loic Chapuis—repeatedly touted these projects in Texas and Louisiana in Technip Energies' press releases and annual reports. *See id.* And for at least some of these projects, Technip Energies has enjoyed funding grants from the U.S. Department of Energy. *See* Section II.D., *supra*; Armington Decl. ¶¶ 7, 10–12, Exs. F, I–K. Not only has Technip Energies pursued numerous major projects in the United States, but it enjoys the strong intellectual property protections provided by the United States, including Technip Energies' thirty-three registered trademarks and twenty-six U.S. patent assets. *See* Section II.E., *supra*; Armington Decl. ¶¶ 14-16, Exs. M-O. These continuous and systematic contacts with the United States are sufficient to evidence that exercising jurisdiction is consistent with the United States Constitution and laws. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Thus, this Court has personal jurisdiction over Technip Energies under Rule 4(k)(2), in addition to having specific personal jurisdiction over Technip Energies.

### E.    TUTSA Does not Preempt PCA's Conversion and Unjust Enrichment Claims against Technip Energies.

PCA's conversion and unjust enrichment claims against Technip Energies are not preempted by TUTSA because they are based upon Technip Energies' improper utilization of PCA's confidential information, and as such, this Court should deny Technip Energies Motion to

Dismiss pursuant to Rule 12(b)(6). Technip Energies' Motion to Dismiss incorporates by reference the preemption arguments made in Technip Energies USA, Inc.'s Motion to Dismiss. *See* Dkt. No. 16 at 13. For the same reasons set forth in PCA's Opposition to Technip Energies USA, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed concurrently herewith which arguments are incorporated by reference herein, Technip Energies' preemption arguments should also be dismissed. PCA briefly summarizes those arguments below.

In the Complaint, PCA alleges that "Technip Energies has knowingly and unlawfully utilized PCA's **confidential <u>and</u> trade secret information** as the basis for its companywide quality management programs . . ." Compl. ¶ 1 (emphasis added). And it is the unlawful use of PCA's confidential and trade secret information that PCA asks this court to remedy by enjoining such use and awarding damages to PCA for such unlawful use. *See id.* ("PCA asks this Court to enjoin Technip Energies from using PCA's **confidential <u>and</u> trade secret information** and to order Technip Energies to pay damages to PCA resulting from such unlawful use.") (emphasis added). Courts in this District consistently find that TUTSA does not preempt tort, restitutionary, or other laws of the State of Texas where claims asserted under such laws are based on the misappropriation of confidential information, as opposed to trade secret information. *See Forum Energy Techs., Inc. v. Jason Oil & Gas Equip., LLC*, Civil Action No. H-20-3768, 2022 WL 1103078, at *9 (S.D. Tex. Apr. 13, 2022) ("Forum Energy's unfair competition claim is based solely on allegations that Jason Energy misappropriat[ed] Forum's confidential information. As alleged, the claim is not based on the misappropriation of trade secrets. The court denies dismissal on preemption. . . .") (cleaned up) (citing *TPI Cloud Hosting, Inc. v. Keller Williams Realty Inc.*, No. A-19-CV-00808-JRN, 2020 WL 4708713, at *3 (W.D. Tex. Jun. 18, 2020) (recognizing that "[t]he application of TUTSA's preemption clause is relatively rare," and allowing the plaintiff's

fraud claim to proceed because "the alleged fraud *could* have taken place even without trade secret misappropriation.") (emphasis in original)); *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 923 (S.D. Tex. 2019) ("[T]he plain language of the TUTSA's preemption provision states that it has no effect on 'other civil remedies that are not based upon misappropriation of a trade secret['] . . . . The court fails to see how the plain language of the TUTSA's preemption provision can be read to preempt civil remedies for the misappropriation of information that is not a trade secret.").

PCA has plead its trade secret and common law misappropriation of confidential information claims in the alternative—specifically, to the extent the misappropriated PCA material is found to constitute a trade secret, that unlawful conduct is to be rectified under PCA's trade secret claims, where if the misappropriated information is found not to constitute trade secret information, it is at least confidential, whereby its misappropriation is addressed by PCA's conversion and unjust enrichment claims. *See Forum Energy*, 2022 WL 1103078, at *8-9 ("den[ying] dismissal on preemption," where "claim is not based on misappropriation of trade secrets," and agreeing with *DHI*, holding that "plaintiffs could maintain their common law causes of action for misappropriation of information that was not a trade secret," along with co-pending trade secrets claims); *DHI*, 397 F. Supp. 3d at 923 ("The court fails to see how the plain language of the TUTSA's preemption provision can be read to preempt civil remedies for the misappropriation of information that is not a trade secret."). Courts in this district have repeatedly recognized that this alternative pleading method is an appropriate one to address misappropriation of information that is at least confidential but that is also alleged to rise to the level of a trade secret. *See, e.g.*, *AMID, Inc v. Meic Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 827-8 (S.D. Tex. 2017) ("AMID **essentially pleaded alternative theories of relief**. It sought relief on the theory that Noland misappropriated information protected as trade secrets, and alternatively

under the theory that the misappropriated information was not a trade secret but was confidential. . . . **MedicAlert denies that the information at issue is a trade secret, but AMID could recover on its tort claim without proving that the information is protected as trade secrets. MedicAlert's motion to dismiss on the basis of TUTSA preemption is denied**.") (emphasis added).

Therefore, both PCA's trade secret claims and its claims for conversion and unjust enrichment should be allowed to remain in the case and the Motion to Dismiss pursuant to Rule 12(b)(6) should be denied.

## VII.    CONCLUSION

For the foregoing reasons, this Court has personal jurisdiction over Technip Energies and PCA's conversion and unjust enrichment claims are not preempted by TUTSA, and as such the Motion to Dismiss should be denied in its entirety.

Dated: February 26, 2025                  Respectfully submitted,

                                          */s/ Nicholas W. Armington*
                                          Nicholas W. Armington (*pro hac vice*)
                                          Massachusetts State Bar No. 687843
                                          PRINCE LOBEL TYE LLP
                                          One International Place, Suite 3700
                                          Boston, MA 02110
                                          Tel: 617-456-8000
                                          narmington@princelobel.com

                                          *Attorney-in-Charge for Plaintiff Crosby Legacy
                                          Company, LLC, d/b/a Philip Crosby Associates*

OF COUNSEL

RUSTY HARDIN & ASSOCIATES, LLP
Russell Hardin, Jr.
Texas Bar No. 08972800
Federal I.D. No. 19424
Megan C. Moore
Texas Bar No. 24054322
Federal I.D. No. 963966

20

Kendall Speer
Texas Bar No. 24077954
Federal I.D. No. 2783343

5 Houston Center
1401 McKinney Street, Suite 2250
Houston, TX 77010
Tel: (713) 652-9000
rhardin@rustyhardin.com
mmoore@rustyhardin.com
kspeer@rustyhardin.com


## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.


*/s/ Megan C. Moore*
Megan C. Moore